UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SONIA BERNADETTE MORRIS,                        :
                                                :
                        Plaintiff,              :    **MEMORANDUM DECISION**
                                                :    **AND ORDER**
                                                :
                - against -                     :    25-cv-1731 (BMC)
                                                :
COMMISSIONER OF SOCIAL SECURITY,                :
                                                :
                        Defendant.              :
---------------------------------------------------------------X

**COGAN**, District Judge.

      1.      Plaintiff seeks review of the decision of the Commissioner of Social Security,
following a hearing before an Administrative Law Judge, that she is not "disabled" for the
purpose of receiving disability benefits under Title II of the Social Security Act.  The ALJ found
that she had several "severe" impairments: degenerative disk disease of the thoracic and lumbar
spine; degenerative joint disease of both hips, knees, and feet; and obesity.  Despite these
findings, the ALJ found that she had sufficient residual functional capacity ("RFC") to perform
"light work," in that she could lift or carry 10-20 pounds occasionally and 10 pounds frequently;
that she could sit, or stand or walk, for 6 hours in an 8-hour workday; and that she could
frequently climb ramps or stairs, occasionally climb ladders, ropes and scaffolds, and stoop,
kneel, crouch and crawl.  Because her past work as a security shift supervisor falls within this
definition of light work, the ALJ found her not disabled.

      2.      In arguing that the ALJ's decision is not based on substantial evidence, plaintiff
raises two points of error.  First, she argues the ALJ did not properly weigh the opinion of her

treating orthopedist, Dr. Raz Winiarsky.  Second, she argues the ALJ failed to consider the effect of her chronic pain on her ability to do her past relevant work.

3.      Plaintiff had been seeing Dr. Winiarksy (and other providers in the same practice group) since the accident which led her to stop working several years prior to her hearing before the ALJ.  Dr. Winiarsky's impairment questionnaire opined that plaintiff could not sit for more than four hours or walk for more than two hours in an eight-hour workday; that plaintiff could lift only five pounds frequently and 20 pounds occasionally; and that plaintiff could carry up to 10 pounds occasionally and 5 pounds frequently.  He also thought she would need to get up and move for 10-15 minute periods every 30-60 minutes; that she would need unscheduled breaks every hour; that she couldn't kneel, bend, or stoop; and that she would miss 2-3 workdays per month due to symptoms or need for treatment.   Finally, he thought she could do at most low-stress work because she would lose attention and concentration as a result of pain, fatigue, and other symptoms.

4.      Plaintiff acknowledges that the deference previously given to the opinion of treating physicians under the prior regulatory scheme is no longer in force, but she points out that a treating physician may have the most probative treatment record in assessing a claimant's functional capacity by reason of his continuing exposure and length of treatment.  She further stresses that, when deciding how to weigh a provider's opinion, an ALJ must consider whether the opinion is "consistent" with other opinions in the record.

5.      Plaintiff finds several faults with the ALJ's treatment of Dr. Winiarsky's opinion. In her view, the ALJ failed to recognize that the opinion was corroborated in important respects by the opinion of the Commissioner's examining consultant, Dr. Ioanis Atoynatan, and the rest of the treatment record; the ALJ incorrectly found that Dr. Winiarsky's opinion was similar to

the opinion of a non-treating and non-examining State Agency internist, Dr. R. Dickerson; the ALJ wrongly characterized certain examination findings as "benign"; and the ALJ improperly considered plaintiff's conservative course of treatment.

6.      Was the opinion of the examining consultant, Dr. Atoynatan, consistent with that of Dr. Winiarsky?  Plaintiff argues that it was because Dr. Atoynatan assessed "marked" limitations, yet the ALJ did not recognize the similarity.  In fact, the consultant's opinion was importantly different from Dr. Winarsky's.  Dr. Atoynatan's "marked" conclusion spoke to restrictions only in the area of "heavy" lifting and carrying, whereas Dr. Winiarsky's views on her limitations extended to light lifting and carrying.  Dr. Atoynatan also seemed to think that plaintiff had a limitation in "prolonged" sitting, but he did not impose the length-of-time and per-day limitations to which Dr. Winiarsky opined.  The two opinions do not fit neatly together in every respect, and it was within the ALJ's discretion to find that Dr. Atoynatan's opinions were closer to those expressed in other medical evidence of record.

7.      What about the other medical evidence?  Plaintiff mentions two independent evaluations by a Workers' Compensation Board physician, Dr. Michael Mendez-Zfass.  His first examination found she had a mild 25% disability and could not lift more than 30 pounds or perform repetitive bending.  His second examination found that she could lift, carry, push or pull up to forty pounds; bend, stoop and squat occasionally; and sit, stand walk, climb and kneel frequently, consistent with "medium" work capabilities.  If plaintiff is suggesting these are consistent with Dr. Winiarsky's opinion and inconsistent with the ALJ's RFC finding, that is incorrect.  The ALJ characterized Dr. Mendez-Zfasss's findings as "benign" and that was not an unfair or inaccurate characterization.

3

8.      Plaintiff also challenges the ALJ's reliance on the opinion of Dr. Dickerson, a state agency consultant who did not examine plaintiff but reviewed her medical records.  I agree with plaintiff that the ALJ's RFC assessment was most consistent with Dr. Dickerson's opinion. However, plaintiff erroneously criticizes the ALJ's finding that Dr. Winiarsky "placed the claimant within a range of light exertion that is not too dissimilar from that of Dr. Dickerson."

9.      Plaintiff correctly notes that Dr. Winiarsky's functional assessment would leave plaintiff unable to do even sedentary work, let alone light work.  But the ALJ did not have to do a function-by-function comparison of the two opinions to reach a conclusion of "not too dissimilar."  "Not too dissimilar," after all, is not a term of art.  Both Dr. Dickerson and Dr. Winiarsky thought plaintiff could occasionally lift 20 pounds, a key component in the ALJ's RFC finding.  They also did not disagree much about plaintiff's impairments and symptoms, and, indeed, the ALJ could validly find that the rather severe limitations to which Dr. Winiarsky opined were not entirely consistent with the results of his own examinations of her.  I might quibble with the ALJ's choice of the phrase "not too dissimilar," considering that the two providers did not reach the same conclusion on RFC, but it is clear from his decision that the ALJ knew that.  He was merely drawing support from the record for his conclusion as to plaintiff's RFC, and those parts of Dr. Winiarsky's assessment were indeed "similarities."

10.      Like the use of the phrase "not too dissimilar," plaintiff attacks the ALJ's use of the word "benign" to describe some of the findings on her examinations which conflicted with Dr. Winiarsky's opinion.  Again, this de-contextualizes what the ALJ found.  Many of her examinations by her own providers consistently recorded normal neurological findings, normal gait, full strength, and intact sensation and reflexes.  The ALJ's "benign" statement reflects a consequential concern: how could someone with full strength have to spend most of her day

laying down, like Dr. Winiarsky said?  It's a good rhetorical question, and the ALJ was entitled
to discount Dr. Winiarsky's opinion by pointing to so many benign findings – even though there
were others that were not benign.  The ALJ recognized those too; he noted the results of her
testing and found her impairments severe.  But the exercise of assessing disability does not stop
at a finding of severity, and pointing to normal test findings as inconsistent with a treating
provider's opinion was appropriate in assessing plaintiff's RFC.

　　　11.　　　In her final defense of Dr. Winiarsky's opinion, plaintiff criticizes the ALJ's focus
on her conservative treatment.  Her providers recommended arthroscopic surgery on her left knee
– she refused, purportedly out of fear.  And she only took over-the-counter acetaminophen,
despite her doctors' prescriptions for stronger painkillers.  But I see no fault in the ALJ's
factoring in plaintiff's choices in measuring her functional ability as having more probative value
that her providers' recommendations.  In fact, I think, viewed in the context of this record, those
facts are very telling.  There is no indication that the providers tried to persuade her to overcome
her fear by, for example, describing consequences if she did not, or cautioning her that they
could not treat her further if she declined to follow their advice, or referring her to a therapist for
counseling.  Moreover, arthroscopic knee surgery, in many instances, is not like spinal surgery or
open-heart procedures. It's a minimally invasive procedure usually done on an outpatient basis
with a high rate of success.  If the ALJ wanted to draw an inference from the fact that plaintiff's
functional level was not so impaired because of her decision not to adhere to her providers' still
rather mild recommendations, that was within his discretion.

　　　12.　　　Finally, plaintiff protests that the ALJ did not factor into his RFC assessment the
effect that her pain would have on her concentration and attention.  It is important to note at the
outset that no one disputes that plaintiff's impairments caused her pain, or that plaintiff's

occupation required significant concentration and focus. But virtually nothing in the record indicates her providers suggested that her level of pain impacted her focus, and, although she complained of pain, she never told her providers that it did. Moreover, her ADLs did not suggest any compromise as a result of pain. Just to take one example, one would not want a person driving a car if her pain limited her ability to focus on what was going on around her – as that person would be a danger to themselves and others – but the record does not show that plaintiff either limited her driving activities or that her providers told her that she should. In addition, as noted above, her choice to limit herself to acetaminophen again supports the ALJ's determination that the pain was not distracting.

13.    The only mention in the record that plaintiff's pain might compromise attention and concentration was the opinion in Dr. Winiarsky's impairment questionnaire that her pain would "periodically" interfere with attention and concentration. There is nothing in his treatment records to support that, and having rejected Dr. Winiarsky's opinions as inconsistent with his own treatment notes as well as the other medical evidence, the ALJ did not have to comment on every one of Dr. Winiarsky's unsupported conclusions. This is especially so because (1) we don't know what Dr. Winiarsky meant by "periodically", and (2) it seems a bit strange that he could find her pain interfered with her attention and concentration yet still find her capable of performing low-stress work.

14.    In sum, although plaintiff pays lip to service to the fact that we are no longer operating under the deference-to-treating-physicians regulatory regime, her arguments read like we are – Dr. Winiarsky's impairment questionnaire should control because he knew her best. However, there was plenty of other evidence in the record impeaching his opinions, including his own treatment records. There was substantial evidence supporting the ALJ's decision.

15.    Accordingly, plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion is granted.  The case is dismissed.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       August 28, 2025